# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jan 11 2017, 6:43 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Stanley L. Campbell
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Larry D. Allen
Deputy Attorney General
Indianapolis, Indiana

LaTonja Anderson
Graduate Law Clerk
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Fernando J. Alvarez, Jr.,
*Appellant-Defendant*,

v.

State of Indiana,
*Appellee-Plaintiff*.

January 11, 2017

Court of Appeals Case No.
02A04-1608-CR-1766

Appeal from the Allen Superior Court

The Honorable Wendy W. Davis, Judge

Trial Court Cause No.
02D04-1603-F6-283

**Brown, Judge.**

[1] Fernando Alvarez, Jr., appeals his sentence for invasion of privacy as a level 6 felony. Alvarez raises one issue which we restate as whether his sentence is inappropriate in light of the nature of the offense and the character of the offender. We affirm.

## Facts and Procedural History

[2] Between December 20, 2015, and January 6, 2016, Alvarez knowingly or intentionally violated a no contact order issued in cause number 02D06-1507-F6-581 ("Cause No. 581") in the Allen Superior Court as a condition of pretrial release, and at the time he had a prior unrelated conviction for invasion of privacy in September 2012.[1] On May 24, 2016, he pled guilty to two counts of invasion of privacy as level 6 felonies.

[3] On July 7, 2016, the court held a sentencing hearing at which it observed that a probable cause affidavit was attached to the presentence investigation report ("PSI") which outlines the facts and circumstances of the offense to which Alvarez pled guilty and asked if the facts and circumstances were true and correct, and he responded affirmatively. The probable cause affidavit states that, between December 20, 2015 and January 6, 2016, Alvarez contacted K.P. via telephone from the Allen County Jail despite an active no contact order, that he was prevented from contacting her because of criminal activity wherein she was the victim, that he contacted her through the jail telephone system

---

[1] According to the presentence investigation report, Alvarez was charged in Cause No. 581 with residential entry and invasion of privacy as level 6 felonies and battery and criminal mischief as class B misdemeanors.

using his phone privileges along with other inmate phone privileges, that he made at least seventy-eight phone calls to her with thirty-seven coming directly from his inmate phone account, that he identified himself as "Fernando" while making these calls, and that calls were placed to K.P. from four different inmate phone accounts. The affidavit further states that several phone calls directly related to Alvarez's criminal trial, that Alvarez contacted K.P. six times the day before the trial and four times after the first day of the trial, that he discussed his trial with her and outlined a defense, and that he told her how her testimony may have hurt him and instructed her to take the stand a second time and to say she believed the no contact order had been dropped.

[4]     Alvarez's counsel noted that Alvarez "pled guilty straight up on this case," requested the court to place him on house arrest, asked it to consider his acceptance of responsibility and acknowledgment of having made the phone calls even before the case was filed, that he obtained his GED in 2007, and that the PSI shows that he always had a job, and argued that people make decisions how to live their lives and that Alvarez and K.P. have made a decision and are "going to be together whenever that day comes." Sentencing Transcript at 8, 11. The State argued that the facts and circumstances are egregious, that Alvarez "chose to call her that night while in trial," that the invasion of privacy conviction in 2012 related to a different victim, that all prior attempts of rehabilitation have failed and he has had his probation revoked, and that it viewed the acceptance of responsibility more as an acceptance of reality and that the call could not be denied, and the State objected to Alvarez serving his

sentence on home detention. *Id.* at 12. Alvarez stated that he knew it was wrong to call K.P. when there was a no contact order in place and that he was scared and worried of doing time and missing his children and being alone, and he apologized to the court and the State and thanked his counsel.

[5] The court stated that Alvarez had "complete disdain for this entire system" and that, in six years, it had "not seen one individual defy me not only inside my courtroom but also outside my courtroom." Sentencing Transcript at 16-17. The court found his guilty plea to be a mitigating circumstance and noted that it agreed with the State that he pled guilty "because it's on tape." *Id.* at 17. It further noted that it observed "an absolute pattern of the same offenses over and over and over" and found the facts and circumstances in the case to be aggravating. *Id.* It stated that he continued to show disdain for the court by reaching out of the jail to the victim against the court's order to attempt to have her lie under oath, that all attempts at rehabilitation have failed, and that he had been to classes and had been given probation. The court found Alvarez's criminal history to be extremely aggravating, noting that he was twenty-seven years old and had twelve misdemeanor convictions and five felony convictions, including convictions for battery, domestic battery, and invasion of privacy. It merged the second count of invasion of privacy with the first count and sentenced him to two and one-half years.

## *Discussion*

[6] The issue is whether Alvarez's sentence is inappropriate in light of the nature of the offense and his character. Ind. Appellate Rule 7(B) provides that we "may

revise a sentence authorized by statute if, after due consideration of the trial court's decision, [we find] that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Under this rule, the burden is on the defendant to persuade the appellate court that his or her sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006). Relief is available if, after due consideration of the trial court's sentencing decision, this Court finds that in its independent judgment, the sentence is inappropriate in light of the nature of the offense and the character of the offender. *See Hines v. State*, 30 N.E.3d 1216, 1225 (Ind. 2015). Sentencing is principally a discretionary function in which the trial court's judgment should receive considerable deference. *Id.* (citation omitted). Whether we regard a sentence as appropriate at the end of the day turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case. *Id.* (citation omitted).

[7] Alvarez contends his sentence was inappropriate and that "[i]t could be argued that any discussion between [he and K.P.] concerning testimony at trial would have been in violation of the Court's separation Order" but that he "was not charged with Obstruction of Justice, nor Contempt, nor anything to do with the trial orders of the Court, or trying to influence [her] testimony" and that "[t]he substance of what they talked about was irrelevant to the charge." Appellant's Brief at 9-10. He asserts "[t]his is not a case in which [he] sought out the subject of the Protective Order to harass, intimidate, or otherwise harm her"

and "[i]t is a case in which the two of them (with history of a long-standing relationship) talked by phone in violation of the Protective Orders." *Id.* at 10. He also argues he graduated from high school, had been continuously employed from March 2015 until his incarceration, that he accepted responsibility by acknowledging the phone calls even before the case was filed, that one of his previous convictions for invasion of privacy involved "a situation where [he] went to the residence where [K.P.] was living during a time when they were briefly separated," and another of his convictions for invasion of privacy "involved the two (2) of them being together in a car and him attempting to hide from the police under a blanket." *Id.* at 11. He maintains that an appropriate sentence would have been one year.

[8] The State maintains that Alvarez cannot show his sentence is appropriate, that he called K.P. at least seventy-eight times using his own and four other inmates' jail phone accounts, that in some calls he instructed her to testify again and lie about knowing that there was a no contact order in place, and that his actions show he was fully aware of the fact that he was not permitted to contact her, ignored this fact, and did so to impact the outcome of a then pending case involving her. The State also argues Alvarez was twenty-seven years old when he committed the offense, that his criminal record includes five felony and twelve misdemeanor convictions, and that he has been convicted of invasion of privacy three times.

[9] With respect to the nature of the offense, the record reveals that Alvarez knowingly or intentionally violated a no contact order issued as a condition of

pretrial release while having a prior unrelated conviction for invasion of privacy in September 2012. He was ordered not to contact K.P. because of criminal activity wherein she was the victim, and he nevertheless contacted her using the jail telephone system at least seventy-eight times using his own and other inmates' phone privileges. Several of the calls related to his criminal trial, six calls occurred the day before the trial, and four calls occurred after the first day of the trial. He outlined a defense and instructed her to take the stand a second time and to say that she believed the no contact order had been dropped.

[10] With respect to the character of the offender, we observe that Alvarez pled guilty without a plea agreement. The presentence investigation report ("PSI") indicates that his juvenile history consists of adjudications for disorderly conduct as a class B misdemeanor if committed by an adult in 2004 and receiving stolen auto parts as a class D felony if committed by an adult in 2006, for which he was unsuccessfully discharged from probation. His adult history consists of convictions for leaving the scene of an accident as a misdemeanor in May 2008; domestic battery as a misdemeanor in July 2008 for which his suspended sentence of 365 days was later revoked and he was ordered to serve a sixty-day sentence; minor in possession of alcohol, battery, criminal trespass, and criminal mischief as misdemeanors in 2009; furnishing alcohol to a minor as a misdemeanor in 2010; residential entry and receiving stolen auto parts as class D felonies in 2011, for which his suspended sentence was later revoked; unauthorized entry of a motor vehicle as a misdemeanor in August 2012; invasion of privacy as a misdemeanor in September 2012; conversion and false

informing as misdemeanors in 2014; residential entry and invasion of privacy as level 6 felonies and criminal mischief as a class B misdemeanor under Cause No. 581 in February 2016; and invasion of privacy as a level 6 felony in March 2016.

[11]   The PSI further indicates that Alvarez reported having four dependent children who reside with their mother, A.M., that he is court ordered to pay child support and is unsure the amount he owes in arrearages, and that he and K.P. were expecting a child.  The PSI indicates that Alvarez obtained his GED in 2007 and was employed from March 2015 through his present incarceration. He reported that he first used marijuana at twelve years of age, that his rate of consumption increased to using daily when he was fifteen years old, and that this rate stayed the same until his present incarceration.  The PSI further states that, when asked about his feelings toward the present offense, Alvarez reported: "Bogus.  I understand it's wrong because of the no contact order, but I really feel it's not fair."  Appellant's Appendix, Volume II (Confidential), at 22. The PSI also indicates that his overall risk assessment score using the Indiana risk assessment system places him in the very high risk to reoffend category.

[12]   After due consideration, we conclude Alvarez has not met his burden of establishing that his sentence is inappropriate in light of the nature of the offense and his character.

## *Conclusion*

[13] For the foregoing reasons, we affirm Alvarez's sentence for invasion of privacy as a level 6 felony.

[14] Affirmed.

Vaidik, C.J., and Bradford, J., concur.